***NOT FOR PUBLICATION***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

D.B., a minor by his Guardians KRISTEN STEINNABEL AND RONALD BERGEN,

Plaintiff,

v.

DIVISION OF YOUTH AND FAMILY SERVICES, et al.,

Defendants.

Civil Action No.: 12-1559 (FLW)

**OPINION**

**WOLFSON, United States District Judge:**

Through this suit, Plaintiff D.B. ("Plaintiff" or "D.B.") seeks to hold Defendant Division of Youth and Family Services ("DYFS")[1], the Department of Human Services ("DHS"), and the State of New Jersey (collectively, "the State Defendants"), along with several unnamed state officials (collectively, "State Official Defendants"), accountable for alleged systematic acts of verbal and physical abuse perpetrated upon him while he was placed in the state foster care system. The State Defendants move to dismiss his suit under sovereign immunity grounds and for failure to file a tort claim notice. For the following reasons, their motion is denied.

[1] In February of this year, DYFS was renamed the Division of Child Protection and Permanency ("DCP&P"). The parties, however, refer to the organization as DYFS in their pleadings and papers hence I do the same.

## I. FACTS AND PROCEDURAL HISTORY

I take the following facts from the Plaintiff's Complaint as true, as I must, on a motion to dismiss. Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

### A. Abuse Allegations

Near the end of 2002, DYFS removed D.B. and his brother from their mother's, Kristen Steinnagel's, care and placed them into foster care at the home of Matthew M. and Anne Marie Muzslay ("the Muzslays"). Compl., ¶¶ 3-4. At that time, D.B. was around three years old. See id. at ¶ 13 (noting D.B.'s birthdate of August 7, 1999). While D.B. was placed in foster care, Steinnagel was allowed to visit him, along with his brother, at the DYFS office in Asbury Park, New Jersey on a bi-weekly basis for a period of two years. Id. at ¶ 4. During those visits, Steinnagel noticed that D.B. was often wearing "old and filthy clothes" and had "visible bruises on his legs and body." Id. at ¶ 5. At one such visit, she discovered that D.B. had a broken collar bone "which he claimed occurred from 'falling out of a van'." Id. He blamed other injuries on the Muzslays's dog or on his own clumsiness. Id. Steinnagel reported directly to DYFS caseworkers that D.B. was bruised and wearing dirty clothes, and she made separate reports of abuse via the DYFS Abuse Hotline. Id. at ¶ 7. Despite these reports, no action was taken to investigate her claims or to remove D.B. from the Muzslays's home. Id. at ¶ 8.

D.B. alleges that, while living with the Muzslays, he was subjected to verbal and physical abuse. According to him, the Muzslays's threw objects at him, including shoes and boots, and slammed his leg in a door. Id. at ¶ 6. They also struck him. D.B.

asserts that he did not report any of these acts of violence when they occurred because Mrs. Muzslay directed him not to speak about the abuse, and threatened him. Id.

D.B. remained at the Muzslays until 2006, when his mother won custody of him through a court proceeding. Id. at ¶ 9. Now that D.B. has returned to living with his mother, he exhibits difficulty in dealing with his emotions and expresses extreme anger. He has been unable to attend school, and, as of May 28, 2009, has been referred to a special education institution for the emotionally disturbed. Id. at ¶¶ 10-12. He has been hospitalized, attends therapy twice per week, and is currently taking a series of psychiatric medications. Id.

According to the complaint, DYFS is an agency within DHS. DYFS was established by the State of New Jersey to investigate reports of abuse and neglect, to ensure the well-being of children placed in foster care, and protect those children from maltreatment at the hand of their foster parents. See id. at ¶ 24. Once a child is placed in foster care, his case is assigned to a district office caseworker. Id. at ¶ 25. Thereafter, a regional DYFS Foster Home Unit places the child in an appropriate home. The district office is responsible for making face-to-face contact and monitoring the child's progress in the home. Id. Each foster care home is licensed through DYFS. Prior to 2003, licenses were granted by DYFS's District and Regional Foster Home Units and DYFS's Bureau of Licensing. Id. at 26. Post-2003, licenses are granted by DHS's Office of Licensing. Id. The regional Institutional Abuse Investigation Unit is responsible for investigating accusations of abuse and/or neglect in a foster care setting. Id.

Based on DYFS's and DHS's alleged failure to protect D.B. from abuse at the hands of the Muzslays, D.B. brings the instant suit against Defendants DYFS, DHS, the State of New Jersey, the Muzslays, Managerial Does 1-10, Supervisory Does 1-10, and Casework Does 1-10. The Managerial and Supervisory Doe Defendants encompass both DYFS and DHS staff, whereas the Casework Does refer to solely DYFS staff.

D.B. asserts the following claims against these defendants: (i) a 42 U.S.C. § 1983 substantive due process claim against the DHS and DYFS supervisory and managerial staff in their individual capacities (Counts 1 and 2)[2]; (ii) a section 1983 claim against those same defendants based on procedural due process (Count 3); (iii) a substantive due process claim under the New Jersey Constitutional against all defendants (Counts 4 and 5); (iv) a violation of the Child Placement Bill of Rights Act, N.J.S.A. 9:6B-1, et seq., against all defendants (Count 6); (v) several claims based upon the defendants' failure to comply with applicable New Jersey statutes and regulations relating to their visitation obligations, licensing of foster care homes, and abuse investigation obligations (Counts 7, 8, and 9); (vi) a negligence claim against all defendants, citing the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. (Count Ten); and (vii) a vicarious liability claim against the State Defendants for the Muzslays's alleged abusive actions (Count Eleven).

[2] To be clear, the complaint references eleven "causes of action" in separate counts. For ease of reference, I group together those counts that assert similar claims. This grouping does not alter my legal analysis.

### B. Tort Claim Notice

D.B. filed an initial notice of claim with the State of New Jersey's Division of Risk Management at the Department of Treasury, on September 1, 2011. See Pl. Opp., Exh. 1.[3] In that notice, D.B. lists the Division of Youth and Family Services and the DHS as the agencies who caused him harm. Several months after the initial notice was filed, on November 1, 2011, the Division of Risk Management acknowledged receipt of the notice and indicated that it was forwarding the notice to the Chief of Investigations at the Division of Law. Id., Exh. 2.

The State Defendants now move to dismiss the complaint on sovereign immunity grounds, and for failure to timely file a tort claims notice.[4]

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

---

[3] In restating the tort claim notice facts, the Court relies on several attachments provided by Plaintiff because they are integral to Plaintiff's complaint. Accord Thomasian v. New Jersey Institute of Technology, Civ. Action No. 08-2218 (FSH), 2009 WL 260791, * 1 n.3 (D.N.J. Feb. 3, 2009). But see Marjac, LLC v. Trenk, Civ. Action No. 06-1440 (JAG), 2006 WL 3751395, *12; id. at 12 n.13 (D.N.J., Dec. 19, 2006) (concluding that a tort claims notice cannot form the basis for a plaintiff's complaint and, therefore, should not be considered on a motion to dismiss). The State Defendants have not challenged the authenticity of these documents.

[4] The caption to the State Defendants' brief states that the motion is to dismiss "and for summary judgment," however, nowhere in their briefing do they assert a basis for converting this motion into one for summary judgment. Nor do they attach any documents that the Court must consider, which might necessitate such a conversion. Thus, I construe their motion as solely one to dismiss.

may be entitled to relief." Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. There, the Court stated that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id., at 545. As the Third Circuit has stated, "the Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating…a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, at 547). In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court explained some of the important principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiff's claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

## III. DISCUSSION

The State Defendants present two grounds for dismissal. First, they argue that Plaintiff's section 1983 claims[5] against DYFS and DHS must be dismissed with prejudice because these state entities are entitled to sovereign immunity. Second, the State Defendants argue that all claims against them must be dismissed because Plaintiff failed to file a notice of claim within 90 days of its accrual, as is required by the New Jersey Tort Claims Act. I address each argument in turn.

### A. Sovereign Immunity

Section 1983 serves a mechanism through which plaintiffs may bring suit in federal court for civil rights violations committed by state actors. It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40

---

[5] In his opposition papers, Plaintiff argues the viability of other causes of action in the complaint, such as the Child Placement Bill of Rights Act and the New Jersey Tort Claims Act. Because the State Defendants' sovereign immunity defense was directed only to the section 1983 claims, the Court does not address the legal sufficiency of these other claims.

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir. 1994); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

While section 1983 grants plaintiffs a means to sue persons acting under state law, it does not abrogate Eleventh Amendment immunity and permit suits directly against the State. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."[6] This immunity from suit extends to agencies, departments and officials of the state when the state is the real, substantial party in interest. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99, 101–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). In other words, sovereign immunity applies not only to the State but to any named defendant that is an "arm of the state." Davis v. Lakewood, No. 03–1025, 2005 WL 1863665, at *3 (D.N.J. Aug.4, 2005) (citing Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001)).

"[T]here are only three narrowly circumscribed exceptions to Eleventh Amendment immunity (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy

---

[6] Notably, the Eleventh Amendment also precludes federal jurisdiction over a state absent the state's consent to suit. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Hence a section 1983 claim against the State is not only barred by the Eleventh Amendment, but federal courts also lack subject matter jurisdiction over such a claim. Id.

an ongoing violation of federal law." M.A. ex rel. E.S. v. State–Operated Sch. Dist., 344 F.3d 335, 345 (3d Cir. 2003) (citing MCI Telecomms. Corp. v. Bell Atlantic–Pennsylvania Serv., 271 F.3d 491, 503 (3d Cir. 2001), cert. denied, 537 U.S. 941, 123 S.Ct. 340, 154 L.Ed.2d 247 (2002). As I recently explained in my decision in Fidanzato v. Somerset, Hunterdon, and Warren Counties Vicinage 13, Civil Action No. 11–5132 (FLW), 2012 WL 4508008, (D.N.J. Sept. 28, 2012), the first two exceptions are inapplicable because New Jersey has not expressly abrogated its immunity under section 1983, nor has it done so by enacting the New Jersey Tort Claims Act. See generally id. at *7. The third exception to immunity—suits against individual state officials for prospective relief to remedy an ongoing violation of federal law—also does not apply here where Plaintiff seeks monetary damages for acts that already occurred, as opposed to prospective injunctive relief. See M.A., 344 F.3d at 351 (discussing third exception as relating to a preliminary injunction); Melo v. Hafer, 912 F.2d 628, 635 n.5 (3d Cir. 1990).[7]

Against this backdrop of Eleventh Amendment jurisprudence, the State Defendants argue that "since the State is not amenable to suit at all, a plaintiff cannot recover any relief against the State since it cannot be held liable under Section 1983," and that DYFS and DHS, as arms of the State, are entitled to this same immunity. Def. Open. Br. at 9 (emphasis added). In response, Plaintiff argues that the State Defendants have simply misread the complaint. As explained above, the section 1983

---

[7] Moreover, by its terms, this exception applies only to state officials and not the State itself or its agencies.

claims are found in Counts 1 through 3. The captions for those claims expressly state that they are made against the State Officer Defendants *in their personal capacities*. In other words, Plaintiff argues, the Section 1983 counts are not made against the State, DYFS, or DHS. A cursory review of the complaint reveals that Plaintiff is correct. See Count 1 ("Against the Managerial Does, the Supervisory Does, and the Casework Does, in their personal capacities"); Count 2 (same); Count 3 (same).

Furthermore, to the extent that the State Defendants suggest that Eleventh Amendment nonetheless applies because Plaintiff is actually suing the State Officer Defendants in their official capacity, see Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that suits against state officials in their official capacities are suits against the State), that argument does not carry the day. When faced with a claim against a state officer, the Third Circuit's decision in Melo v. Hafer instructs courts to look at several factors to determine whether the claim is asserted against the officer in the officer's personal or official capacity. These factors include whether the complaint expressly designates that an official is sued in her personal capacity, whether the plaintiff seeks damages from the state's coffers or from the individual, and whether the plaintiff seeks punitive damages, which can not be recovered from individuals sued in their official capacities.[8] See Pena, 2010 WL 3982321, at *5. Importantly, the circuit has "resolved doubts about the capacity in

[8] Court should also look to the "course of proceedings," such as whether the defendant has asserted a qualified immunity defense. Melo, 912 F.2d at 635. As this case is in its infancy, and the State Officer Defendants have not yet asserted any defenses, that factor is inapplicable here.

which defendants were sued in favor of a plaintiff, and assumed [the plaintiff] sued the [defendants] in their personal capacities, where the plaintiff sought punitive damages." Atwell v. Schweiker, 274 Fed.Appx. 116, 117 (3d Cir. 2007) (discussing Gregory v. Chehi, 843 F.2d 111, 119-20 (3d Cir. 1988)).

Here, as illustrated above, Counts 1 through 3 of the complaint expressly state that they are against the State Officer Defendants "in their personal capacities." In terms of damages sought, the complaint does not specify whether the compensatory damages would be paid from state coffers or by the individual defendants. This is important because, as noted, the complaint asserts separate claims against the state agencies and the State itself. Thus, the Court cannot discern from the complaint, as written, whether Plaintiff intends for the individual defendants to incur their own compensatory damages costs. In addition, the complaint seeks punitive damages, which suggests that D.B. intended to sue the State Officer Defendants in their personal capacities since punitive damages would not be available against them in their official capacities, or against the State Defendants.

Reading the complaint as a whole, while it is not clear whether the State Officer Defendants are being asked to pay their own compensatory damages, resolving all doubts in favor of D.B., and considering the complaint's express statement that Counts 1 through 3 apply to the state official defendants in their personal capacities, I construe the complaint as not asserting the section 1983 claims against the state

officials in their official capacities.[9] As such, Plaintiff's section 1983 counts are limited to the State Officer Defendants in their personal capacities because they would otherwise be barred by the Eleventh Amendment.

Moreover, that the actions taken by the John Doe defendants were undertaken in their roles of employment does not mean that the section 1983 claims are brought against them in their official capacities. For example, the complaint alleges that the state official "Defendants' actions and omissions were a substantial departure from the exercise of reasonable professional judgment, practice, and standards, and amounted to deliberate indifference to Plaintiff['s] welfare." Compl., ¶ 35. But that their actions or omissions were in the context of their employment "merely supports the undisputed proposition that [the officials] acted under color of state law in [their acts of commission or omission], a prerequisite to a successful section 1983 suit." Melo, 912 F.2d at 636. See also id. at 637 ("The Supreme Court cases expressly recognize that individual capacity suits may be brought against government officials who acted under color of state law.") (citing Brandon v. Holt, 469 U.S. 464, 472–73, 105 S.Ct. 873, 878–79, 83 L.Ed.2d 878 (1985) and Owen v. City of Independence, 445 U.S. 622, 637–38, 100 S.Ct. 1398, 1408–09, 63 L.Ed.2d 673 (1980)). Accordingly, the State Defendants' motion to dismiss the section 1983 claims on sovereign immunity grounds is denied.

---

[9] In this connection, the Court notes that the State Defendants may have, indeed, misread the complaint as asserting the section 1983 claims against DYFS, DHS, and the State. Because the State Defendants did not reply to Plaintiff's opposition, the Court has not been informed by the State Defendants if this is the case.

**B.     Notice of Tort Claim**

The New Jersey Tort Claims Act ("NJTCA") directs plaintiffs bringing suit against a public entity to file a tort claim notice within ninety days of the accrual of the cause of action. Plaintiffs who do not comply with this directive are "forever barred" from recovering on their claim. N.J.S.A. § 59:8-8. The purpose underlying this directive is to grant the accused state agency an "opportunity to investigate the claims, and take disciplinary or other appropriate action to rectify inappropriate behavior or flawed practices...." Mawhinny v. Francesco, No. 08–cv–3317, 2010 U.S. Dist. LEXIS 62439, *29, 2010 WL 2557713 (D.N.J. June 22, 2010) (quoting Velez v. City of Jersey City, 180 N.J. 284, 293, 850 A.2d 1238 (2004)). This notice-of-claim requirement applies wherever there is "some nexus between the wrong that is complained of and the defendant's public employment." Mawhinney, 2010 U.S. Dist. LEXIS 62439 at *18, *22, 2010 WL 2557713 (citing Gazzillo v. S. Hunterdon Reg. Bd. of Educ., 398 N.J.Super. 259 (App. Div. 2008)).

The State Defendants argue that Plaintiff failed to file a tort claim notice and, therefore, that all of his claims against them must be dismissed. As demonstrated by Plaintiff's exhibits submitted in opposition, the State Defendants are mistaken. Plaintiff did, indeed, file a tort claim notice, albeit more than ninety days after his claims accrued. Plaintiff filed his initial notice on September 1, 2011, while he complains of conduct that took place from 2003 through 2006. Arguing that his notice is nonetheless timely, he points to statutory text and case law suggesting that the tort claim notice requirement is tolled during a plaintiff's infancy.

The last sentence of N.J.S.A. 59:8-8 provides the following exception to the ninety-day rule: "Nothing in this section shall prohibit an infant or incompetent person from commencing an action under this act within the time limitations contained herein, after his coming to or being of full age or sane mind." Plaintiff interprets this language to mean that he may bring a suit up until and ninety days following his eighteenth birthday for actions that occurred while he was a minor. As noted, Plaintiff's birth date is in 1999, thus, he has yet to reach his eighteenth birthday and is still a minor. Plaintiff points only to Reale v. Wayne Tp., 132 N.J.Super. 100 (Law Div. 1975), in support of his position, but this Law Division citation is of little assistance to the Court since, as a federal district court applying New Jersey law, the Court must look to the New Jersey Supreme Court for guidance and, where no Supreme Court ruling is available, the Appellate Division. See Wisniewski v. Johns—Manville Corp., 759 F.2d 271, 273–74 (3d Cir. 1985). That said, there is Appellate Division case law supporting Plaintiff's construction of the statute. See S.P. v. Collier High School, 319 N.J.Super. 452 (App. Div. 1999) overruled on other grounds by Frugis v. Bracigliano, 351 N.J.Super. 328, 798 A.2d 614 (2002) ("N.J.S.A. 59:8-8 tolls an action until an infant becomes eighteen."); Hill v. Board of Educ. of Middletown Tp., 183 N.J.Super. 36, 39 (App. Div. 1982); Vedutis v. Tesi, 135 N.J.Super. 337, 340-41 (Law. Div. 1975), aff'd 142 N.J.Super. 492 ("[T]he legislative declaration embodied in the savings clause represents a clear intent to preserve an infant's right to recover against a public entity during his period of minority, when he has little or no control over protecting his legal rights."). See also Rost v. Bd. of Ed. of Borough of Fair Lawn,

137 N.J.Super. 79, 79 (App. Div. 1975) (substantially agreeing with rationale of Verdutis).  Accordingly, the State Defendants motion to dismiss based upon a failure to file a tort claim notice is denied.

## IV.    CONCLUSION

For the foregoing reasons, the State Defendants motion to dismiss is denied in its entirety.


Dated:      November 5, 2012                    /s/ Freda L. Wolfson
                                                Freda L. Wolfson, U.S.D.J.